## John Collins *v.* Sarah A. Lynch, Appellant.

*Ejectment—Adverse possession—Husband and wife—Evidence.*

The plaintiff in an action of ejectment showed a complete legal title to an undivided one fourth part of the land in controversy, to defeat which the defendant relied on the acquisition of title by adverse possession. A trespasser upon this land who had not acquired title by adverse possession, sold and transferred his possession to his daughter by an instrument in writing. There was evidence that the daughter, a married woman, took possession, and continued to hold the land for over fifty years. About twenty-two years after the daughter went into possession of the land, ejectment was brought by the record owners against her husband, and a verdict rendered in their favor. Judgment was apparently not entered upon the verdict, and the wife remained undisturbed in the possession of the land. Subsequently the land was sold under a judgment against the wife, and was bought in by her daughter, who after her mother's death took possession. *Held,* that as the land was in the joint occupancy of husband and wife, it was proper for the court to submit to the jury, upon all the evidence, the question under what right or authority the entry was made and possession taken, and to determine whether or not the presumption that the possession was that of the husband was overcome.

Argued April 17, 1895. Appeal, No. 112, Jan. T., 1895, by defendant, from judgment of C. P. Luzerne Co., March T., 1889, No. 86, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Ejectment for an interest in a tract of land in Pittston township. Before RICE, P. J.

The facts are stated in the charge of the court.

The court charged as follows:

" This is an action of ejectment for a tract of land composing parts of three tracts patented in September, 1794, pursuant to warrant and surveys to Jonathan Hancock, David Young and Jesse Fell. In 1803, Parker & Co., the patentees, conveyed the three tracts to the Bank of North America. In 1845 the Bank of North America conveyed them to Sidney B. Smith, and in the same year Sidney B. Smith conveyed them to Charles S. Wurts. He died, and by his will, which was proved in 1859, he devised all of his property to his wife, and in December, 1872, she conveyed the land to Jacob A. John, this plaintiff, William Collins, and Sarah A. Lynch, this defendant.

" This, prima facie, vested a complete legal title in John Collins, to the undivided one fourth part of the land which, if no sufficient defense has been shown, would entitle him to recover in this action.

" The defense is that Sally Ann Collins, the mother of the defendant, acquired title to the land during her lifetime by adverse possession. From a very early period, prior to 1830 at least, William Collins and Sally Ann Collins occupied it as a home for themselves and family. After William's death (in 1857, as asserted by the defendant, but in 1860 according to the date of the will, and according to the testimony of John Collins, the plaintiff), his wife continued to occupy the premises until her death, in May, 1879. Pursuant to a judgment entered in 1872 in favor of Morris & Walsh against Sally Ann Collins, an execution was issued, and the land was levied upon and sold by the sheriff in January, 1884, after the death of Sally Ann Collins, to James L. Morris, who assigned the deed to the defendant in 1885.

" There are three general questions raised by the testimony in the case and by the defense set up : First. What was the nature of the possession, and in whose right was it, prior to the death of William Collins in 1857, or in 1860, as you shall find the fact to be from the testimony ? Second. What was the nature of the possession of Sally Ann Collins after the death of her husband ? Third. What was the effect of the purchase by the defendant, Sarah A. Lynch, in 1885, of the outstanding title or claim of James L. Morris ?

" [A good title may be acquired in Pennsylvania by adverse possession. There is no dispute about that. The possession to give title as against the recorded paper title must be actual, exclusive, notorious, continued, peaceable, hostile. The burden of establishing hostile possession and notice thereof to the owner of the land rests upon the party averring it, and the possession does not become adverse till hostile acts are notoriously and openly committed, such as to preclude a doubt of the character of the holding, and knowledge thereof by the opposite party. These general principles are to be borne in mind by the jury in considering the testimony as to the possession during the lifetime of William Collins, and as to the possession after his death by Sally Ann Collins.] [6]

"There is no competent legal evidence in the case to show that when William Collins and his wife went into possession of the land they did so by virtue of any legal title to the land derived from the owners. There is a claim that they went into possession by virtue of a title, but not by virtue of any legal title derived from the owners of the land. As to the then owners of the land they were trespassers, but although they entered as trespassers, yet if they maintained actual, exclusive, notorious, peaceable, hostile, uninterrupted possession for twenty-one years, a good title was acquired by either William or Sally Ann Collins. Assuming that they went into possession at or prior to 1830, and that William Collins died in 1860, as claimed by the plaintiff, or even in 1857, as claimed by the defendant, they were in possession long enough to give possession by adverse possession. By whom was that title acquired? Was it by William Collins or was it by Sally Ann Collins, his wife? This brings us to the first and a very important question of fact, that is, how did they enter? In the right of William Collins or in the right asserted by Sally Ann Collins? How did they go in possession, and in whose right? In the absence of any evidence on the subject, the legal presumption would be that they entered under and in the right of some claim—whether valid or invalid would be immaterial—of the husband. But this presumption, which might arise in the absence of testimony, would give way to evidence showing how they entered, claimed and held the possession, and a great deal of testimony has been introduced bearing upon this important question of fact.

"The defendant's claim is that Sally Ann Collins, her mother, together with her father, went into possession of the land pursuant to a transfer of a possession right claimed by her father, John Shepherd. The plaintiff claims that William Collins and his wife went into possession pursuant to a claim asserted by him under a contract with Henry W. Drinker. In support of the defendant's claim she has offered in evidence a paper dated Jan. 10, 1827, which reads as follows: 'Pittston, January 10, 1827, I John Shepherd for and in consideration of two heifers and six sheep do hereby bargain and sell to Sally Ann Collins my possession of the Jesse Fell tract of land containing 400 acres more or less. (Signed) John Shepherd. Witnesses, Caleb Welles, Joseph Fell.'

" It is a principle of law that papers under thirty years of age, not recordable papers, when offered in evidence, the execution thereof must be proved by proof of the handwriting of the party who made it or by proof of the handwriting of the subscribing witness, by his own testimony, or if he be dead or without the jurisdiction of the court, by the testimony of other witnesses who know the handwriting. There is, however, a rule that ancient documents, papers more than thirty years old, which on their face are free from suspicion and come from a proper custody, are admissible in evidence without proof of authenticity. In obedience to this rule of law we admitted this paper in evidence. Its genuineness, of course, is to be decided by the jury under the testimony that has been given here bearing upon that subject. It is not for us to pass upon that question in view of the testimony that has been admitted since the admission of the paper. You will bear in mind, however, that the paper is not put in evidence for the purpose of showing a title; that is, it is not admitted for the purpose of showing that thereby Mrs. Collins obtained a title to the land which would be good against the then owners of it. It is put in evidence to show the character of the claim made by William Collins and his wife at the time they went into possession, it being claimed by the defendant, as we have already stated to you, that they went into possession under this paper. In addition to this testimony, testimony has been introduced as to the declarations of Sally Ann Collins, during her lifetime, tending to show that she claimed the property in her own right; declarations made apart from her husband and also declarations made, as claimed, in the presence of her husband, and also admissions alleged to have been made by him.

" [On the part of the plaintiff the claim is, at some date prior to 1830 (I will not be more specific in commenting upon the testimony as to that, you will remember what the testimony was as clearly as I do) that William Collins went into possession under a contract with Henry W. Drinker. Just what right, if any, Henry W. Drinker had to convey the land does not appear in the testimony, nor, so far as this particular question is concerned, is it material. We are now considering the question whether they went into possession under this claim of right of

William Collins under the Drinker contract, or under the claim
of Mrs. Collins under the paper which has been offered in evi-
dence. I do not purpose to go over the testimony bearing upon
these questions. It has been very fully and very ably presented
to you by the counsel on the one side and the other, and we shall
leave it there for your decision. If you find that William and
Sally Ann Collins entered under a transfer from her father,
John Shepherd, and continued the possession uninterruptedly
for twenty-one years, she claiming the land as her own, then
she acquired a good title by adverse possession. But if you
find that they entered under and pursuant to a claim by Wil-
liam Collins that he had a contract from Henry Drinker,
whether such contract was valid or invalid, and that he con-
tinued to work the land as his own during his life, then at the
time of his death Sally Ann, his wife, had not acquired any
title by adverse possession, nor could she tack her subsequent
possession to the prior possession of her husband in order to
make out a title as against the plaintiff in this case.] [13]   If
Sally Ann Collins did not acquire title by adverse possession
during the lifetime of William, did she acquire title by adverse
possession after his death? It is claimed on the part of the
defendant that she did, and that is a question of fact which we
purpose to submit to you, namely, was she, for twenty-one years
after the death of her husband, in the actual, adverse, exclusive,
uninterrupted, notorious possession of the premises for twenty-
one years? That she was in possession from the time of the
death of her husband until the time of her own death is undis-
puted; but it is claimed, in the first place,—and this we sub-
mit to you as a question of fact,—that there was not twenty-one
years of time between the death of her husband and her own
death ; and it is contended, in the second place, that her pos-
session was not exclusive of the owners of the Wurts title. I
will recall the dates. According to the testimony, she died in
May, 1879. Sarah A. Lynch, the defendant, testifies that her
father, William Collins, died in September, 1857. The will
which has been offered in evidence is dated some time in 1860
and is probated in 1860, and if that is the correct date of course
he could not have died prior to 1860. John Collins also testi-
fies that he died in 1860.

" [It is in testimony that the defendant resided upon the

premises during the same period of time after the death of her father. But if she was there under her mother, recognizing her mother's claim, then that would not interfere with the exclusiveness of the possession of Sally Ann Collins. But if during this period between the death of William Collins and the death of Sally Ann Collins, Sarah Ann Lynch was in possession claiming under the Wurts title, it would have the effect of breaking the continuity and exclusiveness of the possession of her mother. This will require you to consider the testimony with regard to the nature of the possession of Sarah A. Lynch during that period of time. For it appears that in 1872 she and her three brothers took a deed for the Wurts title which was entered of record. If they took this deed, as alleged by the plaintiff, pursuant to an arrangement with Sally Ann Collins, and Sally Ann Lynch one of the grantees in the deed remained in possession under it, the possession of Sally Ann Collins during the subsequent period would not be a hostile and exclusive possession which is necessary to give title by adverse possession. Of course as to that question of fact there is a dispute, and you must decide it; it being alleged on the one side that this deed was taken with the approbation, if not pursuant to the request, of Sally Ann Collins, and on the other side that fact being denied.

" It appears that in 1878 an action of ejectment was brought by these same parties against the mother, Sally Ann Collins. While the bringing of the action of ejectment would not of itself break the continuity of the possession of Sally Ann Collins, it is nevertheless a fact to be considered by the jury in determining what was the nature of the claim which Sarah Ann Lynch was setting up while she was in possession, provided you find that the suit was brought by her authority and knowledge. She denies that she authorized the suit in any way and that her first knowledge of it was when the summons was served. If she authorized the suit to be brought, then it would be a fact bearing upon the question as to whether or not she herself was in the actual possession of the premises, or a portion of it at least, under this Wurts title, and thus adversely to the possession of her mother. But if she did not authorize the use of her name, then you should disregard that item of evidence in disposing of the question before you.] [12]

" [So also will you take into consideration the testimony as
to this lease that has been offered in evidence. If, when it was
presented to her, she refused to sign it, to have anything to do
with it, or to recognize the claim which was made under it,
then it ought not to have any bearing in your consideration of
the question. If when this lease was presented to her she
acquiesced in its execution by John M. Armstrong in the man-
ner that it was executed, it would be a circumstance tending to
show the nature of her possession during that period of time—
a circumstance tending to show recognition of the Wurts title
which had been bought in 1872. Here is another question of
fact, and that is, whether or not that lease was executed as it
now appears to be at the time claimed by the plaintiff, and
whether that was done with the knowledge and acquiescence·
of the defendant. It is because of its bearing upon this ques-
tion of fact that we have admitted the evidence tending to show
her relations with John M. Armstrong, and in that view of
the case that testimony is competent to be considered by the
jury.] [11]

" [You will inquire whether or not from the time of the death
of William Collins until the death of Sally Ann Collins there
was a period of twenty-one years, and whether or not Sally
Ann Collins was during that time in actual, adverse, notorious,
open, exclusive possession of the premises. If she was, then·
she acquired title to the premises which was subsequently ac-
quired by the defendant by virtue of a sheriff's sale. If she
was not, and if under the instructions that we have already
given to you, you find that the possession during the lifetime
of William Collins was the possession of William Collins, and
in his right, then she had not such title as would pass by that
sale, and your verdict should be for the plaintiff.] " [2]

At this juncture, defendant's counsel asked the court to
charge upon the following point, submitted orally:

" That the action of ejectment in 1878 by the purchaser of
the Wurts title, against Sally Ann Collins, if it was authorized
by Sarah Lynch and had any effect at all upon the possession,
it would be an admission upon her part that the possession was in
Sally Ann Collins at that time. *Answer:* It would undoubtedly
be an admission, for the purposes of that suit, that Sally Ann
Collins was in possession, but would not prove that she herself,

Sarah Ann Lynch, was not in possession as against the actual fact that she was, as proved by the testimony in the case." [6]

Defendant's counsel have requested us to charge :

"1. The issue in this case is between the paper title held by and obtained from Mary V. Wurts, and the possessory title held by Sally Ann Collins. *Answer :* While, in a general way, that is not an incorrect statement of the issue, yet it does not seem to us to be a full statement of the issue as it has been presented by both sides, and we therefore decline to charge as requested in that point. The issue is between the Wurts title in the hands of the plaintiff, claiming to have purchased it in common with the defendant, pursuant to a request or at least with the approbation of Sally Ann Collins, who was at the time in possession, on the one side, and the possessory title of Sally Ann Collins." [7]

"3. Even if the jury should believe that William Collins, her husband, had a contract from the holders of the paper title, yet if after his death, a continuous, adverse possession of the land was held by the said Sally Ann Collins and her successors in title for a period of twenty-one years from the time of his death before the present action was brought, that would bar any action by the present holders of the said paper title, and vest the title by possession in the defendant, she having become the purchaser of the said title by the sheriff's sale of the title of said Sally Ann Collins, and the conveyance to her by the said sheriff's vendee. *Answer :* This point is answered in the negative. If Sally Ann Collins had not acquired title by adverse possession at the time of her death in 1879, the subsequent possession of Sarah Ann Lynch could not, under the circumstances of this case, be tacked to the previous possession of her mother in order to make a title by adverse possession as against the plaintiff." [1]

"6. If the jury find that Sally Ann Collins took possession of the land, claiming in her own right, and continued the possession under such claim for a period of twenty-one years adversely, her title would not be destroyed by any acts or claims of her husband made or done without her assent, and if the jury find that she thus held the possession for the said term of twenty-one years, the verdict should be for the defendant. *Answer :* This point is affirmed. So also, in this connection,

we say, if the jury find that William Collins took possession of the land, claiming in his own right, and continued the possession under such claim for a period of twenty-one years, his title would not be destroyed by any act or claim of his wife made or done without his consent." [3]

Verdict and judgment for plaintiff.  Defendant appealed.

*Errors assigned* among others were (1, 2, 3, 6, 7, 11, 12, 13, 16) above instructions, quoting them.

*A. Ricketts, Alexander Ricketts* with him, for appellant, cited: Roe v. Harvey, 4 Burr, 2484; Lehman v. Howley, 95 Pa. 295; Overfield v. Christie, 7 S. & R. 173; Mercer v. Watson, 1 W. 330; Parker v. Southwick, 6 W. 377; Graffius v. Tottenham, 1 W. & S. 488; Mead v. Leffingwell, 83 Pa. 187; Hughs v. Pickering, 14 Pa. 297; Collins v. Lynch, 157 Pa. 246; Scheetz v. Fitzwater, 5 Pa. 126: Miles v. Miles, 8 W. & S. 135; Pederick v. Searle, 5 S. & R. 236; Lewis v. Bradford, 10 W. 67; Schall v. Williams Valley R. R., 35 Pa. 191.

*Edward A. Lynch* and *John T. Lenahan, James L. Lenahan* with them, for appellee, cited: Abbey Homestead Assn. v. Millard, 48 Cal. 614; O'Hara v. Richardson, 46 Pa. 385; DeHaven v. Landell, 31 Pa. 120; Thompson v. Coal & Iron Co., 133 Pa. 46; Sedgwick & Waite's Trial of Title to Land, sec. 747; Olwine v. Holman, 23 Pa. 279; Brolaskey v. McClain, 61 Pa. 165; Norris v. Monen, 3 Watts, 470; Sample v. Coulson, 9 W. & S. 62; Duvall's Exr. v. Darby, 38 Pa. 56; Hood v. Hood, 2 Grant Cases, 233; 1 Greenleaf on Evidence, sec. 108; Tompkins v. Saltmarsh, 14 S. & R. 280; 1 Am. & Eng. Ency. of Law, 264, 272; Hole v. Rittenhouse, 25 Pa. 491; Zeller v. Eckert, 4 Howard, 289; Furniture Co. v. Warsaw S. District, 130 Pa. 76.

PER CURIAM, April 29, 1895:

This case depended mainly on questions of fact which were fairly submitted to the jury, and by them determined in favor of the plaintiff.  An examination of the record discloses no substantial error in any of the learned court's rulings, or in its instructions to the jury.  The case appears to have been tried in

substantial accordance with the views of this court as expressed in opinion on former appeal.

We find nothing in the record that would justify us in sustaining any of the assignments of error.

Judgment affirmed.